SIOUX CITY & P. R. CO. (STOUT v.). See Cases Nos. 13,503 and 13,504.

———

## Case No. 12,909.

SIOUX CITY & P. R. CO. v. UNION PAC. R. CO.

[4 Dill. 307.][1]

Circuit Court, D. Nebraska. 1876.

PUBLIC LANDS — GRANTS TO UNION PACIFIC AND SIOUX CITY RAILROADS—OVERLAPPING —TENANTS IN COMMON.

Where the land grant of congress to the Union Pacific Railroad Company and the Sioux City branch (12 Stat. 489; 13 Stat. 356) conflict, and the limits of the respective grants overlap each other, and lands in the common territory were patented to the two companies jointly, as tenants in common: *held*, upon a construction of the legislation of congress in this regard, that the patent was rightly issued and that neither company was the exclusive owner of the said lands, and a partition was decreed.

[Cited in Chicago. M. & St. P. Ry. Co. v. Sioux City & St. P. R. Co., 10 Fed. 442.]

In execution of the legislation of congress, whereby the complainant and defendant were granted public lands in aid of the construction of their respective roads, a joint patent was granted on the 25th of March, 1873, of thirty thousand seven hundred and ninety and forty one-hundredths acres of land lying between the ten and twenty-mile limit of the land grant of the defendant, to complainant and defendant. There were also patented jointly to the two companies twenty thousand nine hundred and four acres within the ten-mile limit of the defendant company. This bill is filed to compel the Union Pacific to convey to the Sioux City & Pacific the one-half of such lands, the latter company claiming all the land embraced in said patents. The cross-bill asks a decree awarding the whole of said lands to the Union Pacific, and that the complainant be compelled to convey accordingly. It is stipulated that the original and cross suits shall be heard as one; that the admissions of the answers in each shall be taken as true in both, and some further facts are agreed upon as evidence in both causes.

The legislation out of which this controversy springs, are the acts of 1862 and 1864. Section 1, Act 1862 (12 Stat. 489), empowered the Union Pacific to build a railroad from a point on the one-hundredth meridian of west longitude to the western boundary of Nevada territory. Section 3 granted land in aid of the construction of said road, "to the amount of five alternate sections per mile on each side of said railroad, on the line thereof, and with-

in the limits of ten miles on each side of said road." Section 14 authorized the construction of the so-called Sioux City and Iowa branches, "upon the same terms and conditions, in all respects, as are contained in this act for the construction of the railroad and telegraph mentioned." Section 9 contains the grant of bonds and lands to the Leavenworth, Pawnee & Western Railroad Company, of Kansas, now known as the Kansas Pacific, and to the Central Pacific, of California. The grants are made in the exact language employed in the grants to the Iowa and Sioux City branches, viz.: they are authorized to build "upon the same terms and conditions, in all respects, as are contained in this act for the construction of said railroad and telegraph line' first mentioned." Section 13 places the Hannibal & St. Joseph Railroad Company, of Missouri, in the same position. Section 4, Act 1864 (13 Stat. 356), amends section 3, Act 1862, by doubling the land grant contained in the latter act. Section 17 relieves the Union Pacific from the obligation to build the Sioux City branch, and authorizes its construction by a company to be designated by the president of the United States, "on the same terms and conditions as are provided in this act and the act to which this is an amendment, for the construction of the Union Pacific railroad and telegraph line and branches," except that it shall receive no more bonds than the Union Pacific would have received if it had built the Sioux City branch under the former legislation, but that it should receive alternate sections of land for ten miles in width on each side of the same, along the whole length of said branch.

The pleadings and stipulation of facts show that the Union Pacific Company filed their assent to the act of July, 1862, as required by the 7th section of the act. No other assent or acceptance of that act or the act of July 2d, 1864, was required. The location for one hundred miles westward from the Missouri river was made by actually surveying and staking the line, as built upon, in the month of November, 1863, and a map of the location at the time was filed in the interior department, October 24th, 1864, and one hundred miles built in 1865. This map referred to the acts of 1862 and 1864, and contained the statement therein, indorsed by the officers of the Union Pacific Railroad Company, that the "red line on said map is hereby (October 19, 1864) designated as the permanent location of the route of the road for one hundred miles west of its eastern terminus." A partial change of the line was made by the company, and approved by the department, in 1865. The Sioux City and Pacific Railroad Company commenced its corporate existence August 1st, 1864. It was designated by the president to build the Sioux City branch, December 24th, 1864, and it designated the general route of the road, July 24th, 1865, and built it in 1869. The lands in controversy lie within one hundred miles of the eastern terminus of the Union Pacific Railroad.

———

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

E. S. Bailey and N. M. Hubbard, for Sioux City R. Co.

A. J. Poppleton, for Union Pac. R. Co.

DILLON, Circuit Judge. One of these suits relates to lands within the ten-mile limit of the land grant of the Union Pacific Railroad Company, and the other to lands outside of the ten-mile and within the twenty-mile limit. The lands are patented to the contesting companies, jointly, as tenants in common. Each company claims for itself the sole and absolute ownership of all the lands. If any portion of the lands is decided to belong to the complainant, it asks a decree to that effect and that partition be made.

1. It is insisted by the Sioux City Company that the Union Pacific Railroad Company has no title outside of the ten-mile limit of its land grant.

The ground of this claim is that, inasmuch as said lands lie east of the one-hundredth meridian, and along the Iowa branch, the land grant was not, as to said branch, enlarged by the act of 1864, which extended the lateral limits of the grant from ten miles to twenty miles. I am of opinion that the act of 1864, as to bonds and lands, applied as well to the branches (including the Iowa branch) as to the main line, or stem of the road. No reason appears for excluding the branches. All were parts of the common scheme or system of roads to connect the Pacific coast with the states at different points on the Missouri river. Such has been the uniform construction of the executive department of the government, and lands have been patented to the Central Pacific, the Kansas Pacific, and other branches of the Pacific system of roads, according to this construction. This construction is right, as the acts of 1862 and 1864, as to the extent of the grant, are to be read and taken together. This court has always acted upon this view, and such would seem to be also the opinion of the supreme court. Prescott v. Railroad Co., 16 Wall. [83 U. S.] 607. Besides, the 17th section of the act of 1864, in referring to the "terms and conditions" upon which the Sioux City road is to be built, speaks of them as those "provided in this act (1864), and the act to which this is an amendment, for the construction of the Union Pacific Railroad and telegraph line and branches." If the act of 1864 made no change as to branches in respect to the "terms and conditions" of the grant, why were branches mentioned in that act in this regard?

2. The next ground of exclusive ownership in the Sioux City Company, against the Union Pacific Company, is based upon the words of the proviso in the 17th section of the act of 1864 (this being the section relating to the Sioux City Company), that "said company shall be entitled to receive alternate sections of land, for ten miles in width, along the whole length of said branch."

In this connection we may refer also to the claim of the Union Pacific Railroad to the exclusive ownership of the same lands. This claim is based upon two main grounds. The first is, that the grant to the Sioux City Company is provisional and contingent, depending upon the designation by the president of a grantee, etc., whereas its grant is present and certain. Second, it claims that as its line was definitely located before the line of the Sioux City Company, and as its road was actually constructed first, it thereby became entitled to the lands within the limits of the common territory. These conflicting claims depend for their solution upon the construction of section 17 of the act of 1864, amending section 14 of the act of 1862. The act of 1862 required the Sioux City branch to be built by the Union Pacific Company whenever Sioux City should have a completed line of railway to the East. It was to be constructed on the "same terms and conditions" as the Union Pacific Company was to construct its other lines. It was to connect with the Iowa branch, or with the main line not farther west than the one-hundredth meridian. The point of junction was to be fixed by the president. The act of 1864 released the Union Pacific Company from the obligation to construct the Sioux City branch. It empowered the president to designate the state corporation to construct the branch. The line of road was to be the same as before, with the important exception that the company, instead of the president, was allowed to "select" the point of junction with the Union Pacific road, and might fix it hundreds of miles west of the one-hundredth meridian, if it chose. This important power, if not limited, might be exercised so as to involve the government in a subsidy greatly in excess of that needed to perfect and secure its scheme of roads. To guard against abuse in this respect, the congress had the wisdom to enact, in the form of a proviso to restrain the grant, the following: "And the said company constructing said branch shall not be entitled to receive in bonds an amount larger than the said Union Pacific Railroad Company would be entitled to receive if it had constructed the branch under this act and the act to which this is an amendment; but said company shall be entitled to receive alternate sections of land, for ten miles in width, on each side of the same, along the whole length of said branch." Now, it is plain that, while the Sioux City branch was constructed under the 17th section of the act of 1864, yet that section is an amendment of the 14th section of the act of 1862, in this respect, and is to be construed accordingly; and the Sioux City Company has the same rights as if this branch had been constructed by the Union Pacific Company under the same legislative provisions.

The inception of the grants to both these contesting companies is the same. They are contemporaneous in their origin. They both spring from the same legislation. The right of the one company, as respects the other, does

not depend upon priority of location or construction. The special provisions of the proviso limit the subsidy to the Sioux City Company. It might build its road west of the one-hundredth meridian, but it could not get bonds for any greater distance, but it was entitled to receive land for the distance actually built, within lateral limits of ten, instead of twenty miles, on each side of the road. So, by the contemporaneous legislation, the Union Pacific Company was, within the designated lateral limits, entitled to receive land for all the line of road it constructed. It is evident that, as these roads must unite, these limits will conflict, and lands granted will lie in the common territory. This controversy relates to such lands. As the grants are the same in their origin and purpose, and both companies have complied with the conditions, the case is peculiarly one in which equality is equity. Such was the view of the land department, and it is the judgment of this court, that neither company is entitled to the exclusive ownership as against the other.

The Sioux City Company bases its claim to exclusive ownership on the words of the proviso—"along the whole length of said branch." The purpose for which these words were used was not to give priority over the main company where the grants might conflict. The whole proviso, taken together, in connection with the other portion of the section, shows that when congress allowed the company to fix its own point of junction, it in effect said: "Yes, you may do this, but only on condition that, if you go west of the one-hundredth meridian, you shall not get any extra bonds, but you may have lands as far as you go, but must take them within lateral limits of ten, instead of twenty miles."

A decree will be entered that the parties are tenants in common as respects the lands jointly patented, and for a partition if the companies cannot agree upon a division.

Decree accordingly.

NOTE. This decree was acquiesced in by the parties, who subsequently effected an amicable partition of the lands.
Construction of land grant to the Burlington & Missouri River Railroad Company in Nebraska (13 Stat. 356, § 19), see U. S. v. Burlington & M. R. Co. [Case No. 14,688].