## Asmus Wiese, Appellee, v. Union Pacific Railroad Company et al., Appellants.*

### Filed June 20, 1906. No. 14,232.

1. **Adverse Possession: Merger.** The party in possession of land as owner has a right to protect that possession by the purchase of any outstanding claim or lien against the property. There is not thereby any break in possession, nor does the adverse occupant rely upon his purchase title in preference to the one which he previously possessed. He joins the two together and possesses whatever title both may give him. *Oldig v. Fish*, 53 Neb. 156, followed and approved.

2. **Public Lands: Railroad Grants: Patents.** The act of congress of July 1, 1862, 12 U. S. Statutes at Large, p. 489, ch. 120, and July 2, 1864, 13 U. S. Statutes at Large, p. 356, ch. 216, granting land to the Union Pacific Railroad Company and to the Sioux City & Pacific Railroad Company, transfers a present legal title, when the terms of the grant are complied with and the lands are identified by a map of definite description filed in the general land office. A patent to such land, when finally issued, relates back to the date of the grant.

3. **Adverse Possession.** When one tenant in common conveys the whole estate in fee with covenants of seizin and warranty, and his grantee enters and holds exclusive possession, the entry and holding must be deemed adverse to the title and possession of the cotenant.

4. **Public Lands: Limitations.** The title of the United States government is fully divested by a grant *in præsenti* of all lands within the place limits of the grant and not within the exceptions therto; and subsequent proceedings affecting the patent to such lands in the interior department do not not suspend the running of the statute of limitations in favor of one claiming under the grant.

Appeal from the district court for Washington county: Edmund M. Bartlett, Judge. *Affirmed.*

*William G. Clark* and *Charles A. Clark & Son,* for appellants.

*James H. Van Dusen, contra.*

* Pending on error in the supreme court of the United States.

OLDHAM, C.

This is an action to quiet title to certain land situated in Washington county, Nebraska, which was included within the land grants made by the United States government to the Union Pacific Railroad Company and the Sioux City & Pacific Railroad Company by acts of congress of July 1, 1862, 12 U. S. Statutes at Large p. 489, ch. 120, and July 2, 1864, 13 U. S. Statutes at Large, p. 356, ch. 216. The land lies within 20 miles of the right of way of the Union Pacific Railroad, and within 10 miles of the right of way of the Sioux City & Pacific Railroad. It is admitted that each of the two railroad companies had fully complied with the provisions of the acts of congress prior to January 1, 1870. No patent for the land was issued until September 23, 1897, when a patent was issued at first by mistake to the Missouri Valley Land Company, as successor to the Sioux City & Pacific Railroad Company, but this patent was canceled by order of the land department and returned to the government, and a patent was issued jointly to the Union Pacific Railroad Company and the Missouri Valley Land Company, as successor to the Sioux City and Pacific Railroad Company. After full compliance with the terms of the grant, the Union Pacific Railroad Company filed its map of definite location and listed the land in controversy as its own. In 1882 it entered into a contract of sale of the land in controversy with one John Japp, for $10 an acre. On the completion of the payments on this contract, it executed to him a warranty deed for this land. The deed was recorded in Washington county in 1888. After the purchase of the land, Japp went into possession thereof and began farming and cultivating the land continuously from the time of his purchase up to 1891, when he conveyed the land for a consideration of $1,200 by a warranty deed to plaintiff Wiese, who placed the deed on record and entered into possession of the premises, which he has occupied, fenced and improved and continuously cultivated to the present

time. Plaintiff claims the land by adverse possession and this color of title. Defendant, Iowa Railroad Land Company, claims an undivided interest in the land by mesne conveyances from the Sioux City & Pacific Railroad Company. At the trial in the court below the title was quieted in the plaintiff, and to reverse this judgment defendants have appealed to this court.

There is little or no conflict in the testimony contained in the bill of exceptions, the controversy being as to questions of law, rather than those of fact. It clearly appears that on the completion of the terms of the grant the Union Pacific Railroad Company made its map of definite location and filed the same in the general land office, and that it listed the land in controversy and conveyed it as land which it had received under the grant. The land was not listed by the Sioux City & Pacific Railroad Company until after the conveyances to plaintiff and his grantor. It appears from the record that the land in controversy had been claimed as indemnity school land by the state of Nebraska, but that this claim had been canceled and denied by the land department before the conveyance by the Union Pacific Railroad Company to plaintiff's grantor, so that, as far as the record discloses, there was no contest pending in the land department affecting the validity of the grant to either of the railroad companies when the land was conveyed to plaintiff's grantor.

On September 16, 1894, plaintiff Wiese undertook to make a cash entry of the land in controversy at the receiver's office of the United States land office at O'Neill, Nebraska, under the act of congress of March 3, 1887, entitled "An act to provide for the adjustment of land grants made by congress to aid in the construction of railroads and for the forfeiture of unearned lands, and for other purposes." 24 U. S. Statutes at Large, p. 556, ch. 376. The right to a cash entry of this land as a forfeited grant was contested before the land department by the Sioux City & Pacific Railroad Company. While the entry was allowed at the land office in the first instance, the

commissioner of the general land office at Washington canceled the entry on the 23d day of August, 1896, and directed the United States land office at O'Neill to note such cancelation on its records.

It is claimed by defendants that this application for a cash entry at the land office at O'Neill was a recognition of the outstanding title in the United States government, which tolled the statute of limitations. In support of this proposition we are cited, as a controlling case among others, to the opinion of this court in *Hull v. Chicago, B. & Q. R. Co.*, 21 Neb. 371. In this case it was held that the recognition of the title of the record owner of the land by the railroad company in seeking to condemn the land was such a recognition as would arrest the statute of limitations, even if it had commenced to run. Here the recognition was of the title of the record owner of the premises. In the case at bar, the attempt on the part of Wiese to procure the outstanding patent from the United States was in no sense a recognition of the title of the Sioux City & Pacific Railroad Company. At the time the application for the cash entry was made, Wiese and his grantor had been in possession of the land, claiming it as their own, for the full statutory period of limitation. · Even if the application had been made before the full period of occupancy had run, so far as the rule in this state is concerned, such effort to procure an outstanding title would not have impaired the right to rely upon the statute. In *Oldig v. Fiske*, 53 Neb. 156, which reviews our former decisions, it is said: "A party in possession of land as owner certainly has a right to protect that possession by the purchase of any outstanding claim or lien against the property. There is not thereby any break in the possession, nor does the adverse occupant rely upon his purchased title in preference to the one which he previously possessed. He joins the two together and possesses whatever title both may give him."

The contest between the two railroad companies concerning these overlapping land grants appears to have

been instituted after the conveyance of the land in controversy by the Union Pacific Railroad Company. This contest was finally determined in *Sioux City & P. R. Co. v. Union P. R. Co.*, 4 Dill. (U. S.) 307, by holding both companies as tenants in common of the overlapping grants. It was under this view of the conflicting rights of the two companies that a joint patent to the land was subsequently issued to the two companies by the direction of the secretary of the interior.

It is further contended by counsel for the defendants that the title to the land in controversy remained in the government until the issuance of the patent in 1897, and, on the contrary, it is contended by counsel for the plaintiff that, on the compliance with the terms of the grant by the different railroad companies and the filing of the map of definite description in the general land office, the title of the general government was divested and the railroad companies took the lands by grants *in præsenti*. The question of interpretation of grants by this act was before the supreme court of the United States in the case of *Deseret Salt Co. v. Tarpey*, 142 U. S. 241, and it was there held, in an exhaustive opinion by Field, J., that the act of July 1, 1862, 12 U. S. Statutes at Large, p. 489, ch. 120, granting lands to the Union Pacific Railroad Company, transfers a present legal title, and when the lands are identified by the location of the road, such title attaches as of the date of the grant. In this case it was held that the lessee of the railroad company might maintain ejectment for lands within the grant, although the patent had not yet issued from the general government. In the opinion it is said:

"In the legislation of congress a patent has a double operation. It is a conveyance by the government, when the government has any interest to convey; but where it is issued upon the confirmation of a claim of a previously existing title it is documentary evidence, having the dignity of a record, of the existence of that title, or of such equities respecting the claim as justifies its recognition

and confirmation. The instrument is not the less efficacious as evidence of previously existing rights because it also embodies words of release or transfer from the government."

In *French v. Fyan,* 93 U. S. 169, it is said by Miller, J.: "The patent, therefore, which is the evidence that the lands contained in it had been identified as swamp-lands, under that act, relates back and gives certainty to the title of the date of the grant."

Now, applying the principle announced in these cases to the facts in issue, we must conclude that, on the full compliance with the terms of the grant and the identification of the lands by the map of definite description filed in the land department, the title to the lands passed as of the date of the grant to the railroad companies, and the patent subsequently issued but evidences such fact.

It is further urged, however, by counsel for the defendants that, even if the patent when finally issued by the general government should be construed to relate back to the time of the grant as between the two contending railroad companies, it is inequitable and unjust to permit the relation for the purpose of supporting plaintiff's claim to title by adverse possession. And in support of this contention we are cited to the case of *Gibson v. Chouteau,* 13 Wall. (U. S.) 92. This was a case in which the right of one claiming adversely to the grant and patent, which had been long contested in the land department of the United States, was held not entitled to have the final award of the patent dated back to the time of the grant for the purpose of aiding his claim to a title by adverse possession. In reversing a contrary holding by the supreme court of Missouri, it was said by the same learned judge who delivered the subsequent opinion in *Deseret Salt Co. v. Tarpey, supra:*

"The error of the learned court consisted in overlooking the fact that the doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice, and is only applied for the security and protection of per-

sons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title. The defendants in this case were strangers to that party and to his equitable claim, or equitable title, as it is termed, not connecting themselves with it by any valid transfer from the original or any subsequent holder."

In the case at bar, each of the contending parties relies on the same grant of the land in controversy, that is, the congressional grant of 1862 and 1864. The land is within the place limits of this grant to the grantors of each of the contending parties. When, as pointed out before, there appears to have been no contest over the acquisition of this land by the congressional grant, the Union Pacific Railroad Company listed the land as its own, and conveyed the same for a valuable consideration to plaintiff's immediate grantor by a deed purporting to convey the entire interest in the land. It is a proposition well recognized by the weight of authority, as well as by the courts of this state, that, when one tenant in common conveys the whole estate in fee with covenants of seizin and warranty and his grantee enters and claims and holds exclusive possession, the entry and holding must be deemed adverse to the title and possession of the cotenant and amount to a disseizin. *Kittredge v. Proprietors of Locks & Canals on Merrimack River,* 34 Mass. 246; *Hanson v. Ingwaldson,* 77 Minn. 533, 80 N. W. 702; *McCann v. Welch,* 106 Wis. 142, 81 N. W. 996; *Beall v. McMenemy,* 63 Neb. 70. Now, at least at the time that the deed from the Union Pacific Railroad Company, purporting to convey the entire estate in this land, was placed on record, defendants' grantor was served with notice of the adverse claim to the entire land by its cotenant, but, so far as the record discloses, the first time that defendants' grantor asserted any claim to the land of any nature, other than its compliance with the terms of the grant, was in the year 1894, when it contested plaintiff's right to a cash entry. In this contest, defendants' grantor contended that the land was within

the terms of the grant and that it had not been forfeited, nor had it ever been conveyed by contestant to the plaintiff. When the contest over this certificate had been terminated by the cancelation of the plaintiff's application, by order of the commissioner of the land office in 1896, no further effort was made by defendants' grantor to evict plaintiff from the possession of the land, or to assert its right therein as a cotenant, until the filing of its answer in the instant suit on the 5th day of October, 1903.

In view of these facts, we think that the doctrine of relation is taken out of the reason of the rule announced in *Gibson v. Choutcau, supra:* First, because there was a privity of interest between the original grantors of the contending parties, each claiming under the terms of the same grant, and, second, because defendants' grantor, by neglecting to list the land in the overlapping grant, permitted plaintiff's grantor, the Union Pacific Railroad Company, to sell and dispose of the land for a valuable consideration to John Japp, and permitted Japp to convey the land for a valuable consideration to plaintiff. This laches in the assertion of its cotenancy in the land in controversy by defendants' grantor, in addition to the intervening rights that plaintiff has acquired in reliance on the title of his grantors, make it, in our view, both just and equitable that the patent issued later should relate back to the date of the grant for the purpose of quieting plaintiff's title. Defendants seek to execuse the laches of their grantor in asserting its claim to the land, by alleging that, up to the time of the final issuance of the patent, the land in controversy was within the exclusive jurisdiction of the land department of the United States. If the grant were one which the department of the interior had paramount authority to determine, this contention would be well founded; but, as the grant in question was one *in præsenti* and as the land in controversy was within the place limits, and not within the exceptions of the grant, the title of the general government was fully divested by this grant, and any subsequent proceedings in the interior

department should not and would not toll the statute of limitations. *Sage v. Rudnick,* 91 Minn. 330, 100 N. W. 106; *Southern P. R. Co. v. Whitaker,* 109 Cal. 268.

We therefore recommend that the judgment of the district court be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.