## MISSOURI VALLEY LAND COMPANY v. WIESE.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 101. Argued January 10, 1908.—Decided February 3, 1908.

Where a judge of the highest court of a State, in allowing a writ of error, adds to his signature "Presiding Judge, etc., in the absence of the chief judge from the State;" that recital is *prima facie* evidence that the chief judge is absent and the judge signing is presiding, and, if not controverted, the writ of error is properly allowed and the requirement of § 999, Rev. Stat., that it must be allowed either by the Chief Justice of the state court or a justice of this court, is complied with.

The contention in the state court that plaintiff in error's title rested on a patent to his grantor and that prior to the issuing thereof the legal title had remained in the United States, so that adverse possession could not be obtained, involves a Federal question, and as in this case it was not frivolous, and was necessarily decided by the state court, and such decision was adverse to the title set up under the United States, this court has jurisdiction under § 709, Rev. Stat., to review the judgment.

The rulings of this court that the Union Pacific Railroad main line grant, within place limits, made by the act of July 1, 1862, 12 Stat. 489, and the amendatory act of July 2, 1864, 13 Stat. 356, was *in præsenti*, and that after definite location of its road the grantee company could maintain ejectment and that title could be acquired against it by adverse possession, held in this case to apply to lands embraced within the grant for construction of the Sioux City branch road, notwithstanding such branch was to be constructed by a company to be thereafter incorporated.

Where lands are within the overlap of place limits of two grants, both of which are *in præsenti*, and for which eventually a joint patent is issued to both companies, the occupancy of a portion thereof, under a deed given by one of the companies after definite location, and before the issuing of the joint patent, is adverse to the other company, and not that of a co-tenant; nor, under the circumstances of this case, do the acts of such occupant in acquiring title from the United States, under the remedial act of March 3, 1887, 24 Stat. 556, interfere with his title thereto which had already been established by adverse possession.

THE facts are stated in the opinion.

*Mr. Charles A. Clark* for plaintiffs in error in this case and in No. 102 argued simultaneously herewith:

The grant for the Sioux City Branch was not *in præsenti*.

It was made by § 17, act of July 2, 1864, to a railway corporation to be *thereafter* designated whether then in existence or afterwards organized and which *shall be entitled to receive* alternate sections for ten miles in width on each side of the same along the whole length of said branch.

The forfeiture imposed for failure to complete the branch was merely "all of the railroad which shall have been constructed by said company;" and did not include all lands as in the case of the main line and other branches under § 17, act of July 1, 1861.

Where it has been held that the grant was *in præsenti* the language was, "that there be and is hereby granted." *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241; *Toltec Ranch Co.* v. *Cook,* 191 U. S. 532; *Iowa Railroad Land Co.* v. *Blumer,* 206 U. S. 482. Where the language of the grant is "shall be granted" as in the act of 1864, it is not a grant *in præsenti* of the legal title. *Minnesota* v. *Hitchcock,* 185 U. S. 392; *United States* v. *Thomas,* 151 U. S. 583; *Beecher* v. *Weatherby,* 95 U. S. 523; *Cooper* v. *Roberts,* 18 How. 179.

There may be a grant *in præsenti* of an inchoate right or title where the legal title does not pass until patent is issued for the land. *Rogers Locomotive Co.* v. *Am. Emigrant Co.,* 164 U. S. 559; *Michigan Lumber Co.* v. *Rust,* 168 U. S. 592.

As to the jurisdiction of the Land Office see *United States* v. *Winona & St. P. Ry.,* 15 C. C. A. 103, 104.

The decision in this case was affirmed on appeal. *United States* v. *W. & St. P. Ry.,* 165 U. S. 463, 474, 475. See also *Moore* v. *Robbins,* 96 U. S. 530, 533; *Minter* v. *Crommelin,* 18 How. 89; *United States* v. *Schurz,* 102 U. S. 401; *French* v. *Fyan,* 93 How. 172; *Quinby* v. *Conlan,* 104 U. S. 420; *Smelting Co.* v. *Kemp,* 104 U. S. 647; *Steel* v. *Refining Co.,* 106 U. S. 452; *Heath* v. *Wallace,* 138 U. S. 585; *Knight* v. *Association,* 142 U. S. 212; *Noble* v. *Railway Co.,* 147 U. S. 174; *Barden* v. *Railway Co.,* 154 U. S. 288.

"The decisions of the Land Department in contest cases are conclusive upon all questions of fact." *Love* v. *Flahive,*

205 U. S. 198; *Gertgens* v. *O'Connor*, 191 U. S. 240, citing *Burfenning* v. *Chicago &c. Ry. Co.*, 163 U. S. 323, and cases there cited; *Johnson* v. *Drew*, 171 U. S. 99; *Gardner* v. *Bonestell*, 180 U. S. 362.

Where a public grant is being administered by the Land Department the courts cannot anticipate its decision by passing upon the title to lands involved in contests before the Department in the administration of such grant. The jurisdiction of the Department is exclusive. *French* v. *Fyan*, 93 U. S. 171.

Courts are not permitted to "render a decree in advance of the action of the Government which would render its patents a nullity when issued." *Marquez* v. *Frisbie*, 101 U. S. 475, and cases cited; *Vance* v. *Burbank*, 101 U. S. 509; *Craig* v. *Leitensdorfer*, 123 U. S. 213; *Ehrhardt* v. *Hogaboom*, 115 U. S. 67, 69.

The officers of the Land Department were "charged with the duty of administering the land grant and determining what lands did and what did not pass, the only tribunal to which the company could then apply and upon whose ruling it was bound to act." *United States* v. *Winona &c. Ry.*, 165 U. S. 475; *Oregon* v. *Hitchcock*, 202 U. S. 70; *In re Emblen*, 161 U. S. 56, 57; *McDaid* v. *Oklahoma*, 150 U. S. 209; *Bockfinger* v. *Foster*, 190 U. S. 121, 126; *Humbird* v. *Avery*, 195 U. S. 502, 510.

As an action for the possession of the land could not have been maintained by the Sioux City Company, or its grantee, the statute of limitations could not run or toll the right of that company or its grantee under patent for the land when finally issued. *Howard* v. *Perrin*, 200 U. S. 74, 75; *Gibson* v. *Choteau*, 13 Wall. 92; *Iowa Ry. Land Co.* v. *Blumer*, 206 U. S. 495, 496.

It is only in the interest of justice that the fiction of relation is applied by which a legal title is held to relate back to the initiatory step for the acquisition of the land. *United States* v. *Anderson*, 194 U. S. 399, and cases there cited.

Where, as in the case at bar, the application of that rule

would, under a state statute of limitations giving title by prescription, toll the legal title before it passes from the United States, this is not in the interest of justice, and the fiction of relation cannot obtain. *Gibson* v. *Choteau,* 13 Wall. 100; *Howard* v. *Perrin,* 200 U. S. 74, 75.

The writ of error herein was properly issued. See *Butler* v. *Gage,* 138 U. S. 56; *Havnor* v. *New York,* 170 U. S. 411.

The case presents Federal questions clearly giving this court jurisdiction. *Gibson* v. *Choteau,* 13 Wall. 92; *Redfield* v. *Parks,* 132 U. S. 246; *Iowa R. R. Land Co.* v. *Blumer,* 206 U. S. 482.

*Mr. James H. Van Dusen,* with whom *Mr. Edward F. Colladay* was on the brief, for defendant in error in this case and in No. 102:

The writ of error herein was not properly issued, because it appears that it was not signed by the Chief Justice of the Supreme Court of the State, as required by law. *Havnor* v. *New York,* 170 U. S. 411.

There is no Federal question involved in this case. It is merely a suit to quiet title brought by one of two tenants in common against the other, both of whom base their claims of title upon the same grant from the United States. The case is governed by *Corkran Oil Co.* v. *Arnaudet,* 199 U. S. 182, and *Dibble* v. *Bellingham Bay Land Co.,* 163 U. S. 74.

The acts of Congress of July 1, 1862, and July 2, 1864, were grants *in præsenti* and, under the admission in the pleadings of the completion of the railroads and the compliance with all the terms and conditions of the act prior to January 1, 1870, operated to pass the title of the Government on or prior to that date. *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241; *Toltec Ranch Co.* v. *Cook,* 191 U. S. 291; *Schulenberg* v. *Harriman,* 21 Wall. 44; *Leavenworth L. & G. Ry. Co.* v. *United States,* 92 U. S. 733; *Platt* v. *Union Pac. Ry. Co.,* 99 U. S. 48; *St. Joseph Ry. Co.* v. *Baldwin,* 103 U. S. 426; *St. Paul Ry. Co.* v. *Phelps,* 137 U. S. 528; *Iowa Railroad Land Co.* v. *Blumer,* 206 U. S. 482.

If title passed from the Government, as contended by Wiese, the state statute of limitations operated and proceedings before the Land Department could not toll it. *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241; *Toltec Ranch Co.* v. *Cook,* 191 U. S. 291; *Southern Pac. Ry. Co.* v. *Whitaker,* 109 California, 268; *Sage* v. *Rudnick,* 91 Minnesota, 330; *Iowa Railroad Land Co.* v. *Blumer,* 206 U. S. 482.

There is no evidence in the record showing any controversy before the Land Department over the land in question between the two railway companies, the only contest being between Wiese and the Missouri Valley Land Company. Hence, the contention that there was a contest between the railroad companies as to which was entitled to the land pending before the Land Department is not supported by any evidence.

Whether the application of Wiese to enter the land under the act of Congress of 1887 prevented the running of the state statute of limitations was a question exclusively for the state court, and it held that the statute was not thereby tolled. *Oldig* v. *Fiske,* 53 Nebraska, 159; *Beall* v. *McMenemy,* 63 Nebraska, 70.

The conveyance by the Union Pacific Railroad Company to Japp, and the exclusive possession of Japp and Wiese thereunder, constitute an adverse possession, and this was a question exclusively for the state court.

Mr. Justice White delivered the opinion of the court.

Within the grants of land made to the Union Pacific Railroad Company and the Sioux City and Pacific Railroad Company by the act of Congress of July 1, 1862, c. 120, 12 Stat. 489, and the amendatory act of July 2, 1864, c. 216, 13 Stat. 356, some of the land within place limits overlapped. This controversy concerns the title to a forty-acre tract within an overlap.

We state the salient facts established by the pleadings and

the proofs in order to make clear the contentions which are required to be decided.

The land involved is the northeast ¼ of the northeast ¼ of section 21, township 17, range 11 east, Washington County, Nebraska. At the time of the passage of the granting acts referred to the records of the General Land Office showed a school indemnity selection of the tract now in controversy, made on July 1, 1858. The railroads named, each having complied with all the conditions of the acts of Congress, had become fully entitled to the granted lands prior to January 1, 1870. A joint patent was issued in 1873 to the two roads named for a large quantity of the lands within the common territory. This action of the Land Department was upheld by the Circuit Court for the District of Nebraska in 1876, and the two railroad companies were adjudged to be tenants in common of such lands. *Sioux City & P. R. R. Co.* v. *Union Pacific Railroad Company*, 4 Dill. 307; *S. C.*, Fed. Cas. No. 12,909. As remarked in a footnote to a report of the case, "This decree was acquiesced in by the parties, who subsequently effected an amicable partition of the land." Apparently, however, in consequence of the school indemnity selection referred to, the forty-acre tract now in controversy was not included in such patents. On July 3, 1880, the school indemnity selection was cancelled by the General Land Office because not authorized by statute. See 17 L. D. 43. This cancellation, so far as the record discloses, left the tract free from claims antagonistic to the rights of the railroad companies under the grants of 1862 and 1864. On June 12, 1881, the Union Pacific Railroad Company "listed the land in question, per list No. 4, but the Sioux City and Pacific Railroad Company never listed the same." On December 1, 1882, the Union Pacific Railroad Company sold, and in 1887, after completion of the payment for the same, conveyed the land to John Japp by a warranty deed, purporting to transfer the entire title, and this deed was soon afterwards recorded. Japp went into and remained in open, continuous and adverse possession of the land, farm-

ing the same, until February 28, 1891, when he sold it to Asmus Wiese, the defendant in error. The latter at once recorded his deed, inclosed the land with a wire fence, and maintained an exclusive possession of the land, claiming to be the owner.

Upon the ground that the school indemnity selection referred to, although invalid, was uncancelled when the railroad grants of 1862 and 1864 were made, and that such invalid selection operated to except the tract in question from said grants, the General Land Office on May 19, 1892, cancelled the listing of the tract which had been made by the Union Pacific Railroad Company and rejected a claim "as to this land" made by the Sioux City and Pacific Railroad Company. When such claim was made and its precise character, is not shown by the record.

By § 5 of the act of March 3, 1887, c. 377, 24 Stat. 556, providing for the adjustment of land grants made by Congress to aid in the construction of railroads and for the forfeiture of unearned lands, etc., it was made lawful for a *bona fide* purchaser of lands forming part of a railroad land grant, but which for any reason had been excepted from the operation of the grant, to make payment to the United States for said lands and obtain patents therefor. Because of the ruling made by the General Land Office, to the effect that the Union Pacific Railroad Company was without title to the land which it had conveyed to Japp, as before stated, Asmus Wiese, on August 10, 1893, began proceedings under the fifth section of the act of 1887 to obtain a patent to the land from the United States, made the required publication and proof, and on September 25, 1893, paid to the register of the proper local land office the sum of $50, the price of the land. A certificate was delivered to Wiese, reciting that he was entitled, on presentation thereof, to receive a patent. On October 17, 1894, presumably while an application of Wiese for patent was pending before the Commissioner, the Sioux City and Pacific Railroad Company filed a protest against the issue of the patent, on the ground that the land affected lay within the

limits of the grant to said company under the act of 1864, that the indemnity school selection then apparently existing was void, and did not cause the land to be excepted from the grant on the definite location of the road, and in consequence that there was no authority of law for the purchase by Wiese. It was further claimed that as the land was within the grant to the Sioux City road, it was a condition precedent to acquiring title under the act of 1887, that it had been purchased from that company, whereas the proof by Wiese was that it had been purchased from the Union Pacific Railroad Company. The protest was dismissed by the Commissioner on the ground that the Sioux City Company was debarred from making the protest, because a claim previously made by that road to the land had been rejected. Thereafter, upon application of the attorneys for the Sioux City Company, this decision of the Commissioner was reviewed by the Secretary of the Interior. On April 28, 1896, applying a prior decision in *Union Pacific Ry. Co.* v. *United States*, 17 L. D. 43, that official held that the school indemnity selection referred to having been made without statutory authority therefor, did not reserve the land so selected from the operation of subsequent grants to the railroads on the definite location of their line or lines, and that the entry made by Wiese in supposed conformity to the act of 1887 was unauthorized. In August following the entry of Wiese was formally cancelled. In September, 1897, a patent from the United States for the tract was issued to the Missouri Valley Land Company as the successor in interest to the Sioux City and Pacific Railroad Company. Following a notification from the Land Office by letter, dated May 17, 1898, that the land had been erroneously patented, as it was within the limits of the grant to the Union Pacific Railroad Company, and a patent should have issued to the companies jointly, the Missouri Valley Land Company by quitclaim deed reconveyed the land to the United States. Finally, on July 24, 1903, a patent for the land was issued by the United States to the Union Pacific Railroad Company, successor in interest to the Union Pacific

Railroad Company and to the Missouri Valley Land Company, successor in interest of the Sioux City and Pacific Railroad Company, jointly.

Prior, however, to the issue of the patent last referred to, and on November 12, 1902, Wiese commenced in the District Court of Washington County, Nebraska, this action to quiet his title to the tract, making defendants to the petition the Union Pacific Railway Company, the Sioux City and Pacific Railroad Company, and the Missouri Valley Land Company. On February 7, 1903, the Union Pacific Railway Company filed a disclaimer of "any and all interest of every kind or nature in and to the subject matter of this action." The issues, however, upon which the case was tried were made by a second amended petition, filed on February 20, 1904, and an answer and cross-petition thereto and a reply to the cross-petition. The only defendants named in this second amended petition were the Missouri Valley Land Company and the Iowa Railroad Land Company. Averments were made in the petition as to the making of the overlapping grants by Congress, the completion of the two railroads prior to January 1, 1870, the sale to Japp in 1882 and by Japp to the plaintiff, the adverse possession of the land by the plaintiff and his grantor, commencing in 1882, absolute ownership of the land by the plaintiff, the issue in 1903 of the joint patent for the land to the successors in interest of the original beneficiaries of the grants made by the acts of 1862 and 1864, and the assertion of conflicting claims to the land by the defendants as successors in interest to the Sioux City and Pacific Railroad Company. The prayer was that the title of plaintiff might be quieted, etc.

We excerpt from the brief of counsel for plaintiffs in error a synopsis of the contents of the claims made by its answer and cross-petition:

"Plaintiff in error set up and claimed by its answer and cross-bill that the title to its interest remained in the United States until the issuance of the patent in 1903; in other words, that the grant for the Sioux City branch was not a grant of

the legal title *in præsenti*. It also specially set up and claimed that the Land Department had jurisdiction to determine whether the land was subject to the grant under acts of 1862 and 1864, and to determine all disputes as to who was entitled to a patent therefor; that it was not adjudged until July 24, 1903, that each company under the grant was entitled to a moiety of the lands. That while the Land Department was holding, as above stated (because of the indemnity school selection), the land in controversy to have been excepted from the grants under the acts of 1862 and 1864, defendant in error was permitted by the local land officers of Nebraska to enter the land under the act of Congress of March 3, 1887, and that this entry was not cancelled until August 25, 1896; that under these rulings and contests, and while the title remained in the United States, up to the issue of the joint patent, the possession of defendant in error was in no sense adverse, but was in subserviency to the title of the United States."

The plaintiff by his reply in substance alleged that the grants were *in præsenti*, and that the effect of the completion of the railroads and compliance with all the terms and conditions of the act prior to January 1, 1870, operated to pass the title of the Government on or prior to that date, and that the General Land Office had not thereafter jurisdiction in respect to such lands, and that the adverse possession of the plaintiff was not affected by the proceedings had in the Land Department concerning such land.

The cause was submitted to the court on the pleadings and evidence, and a decree was entered adjudging that Wiese had a perfect title to the tract. The Supreme Court of Nebraska affirmed the decree (108 N. W. Rep. 175), holding, in substance, that the grant to the two companies of the tract in controversy was *in præsenti*, that the title of the companies attached upon the definite location of their lines of road, and that the adverse possession of Wiese and his grantor, commencing in 1882, had completely barred any claims of the

companies to the property. The case was then brought to this court.

A motion has been filed to dismiss the writ of error because it "was not allowed by the Chief Justice of the Supreme Court of Nebraska, and it does not appear in the record by what authority the judge who allowed the writ styles himself 'Presiding Judge of the Supreme Court of Nebraska,' and because there is no Federal question involved in said cause."

Looking at the record we find that originally the writ of error was signed by "Charles B. Letton, Justice of the Supreme Court of the State of Nebraska," and that subsequently an additional signature was added, viz., "John B. Barnes, Presiding Judge of Supreme Court of Nebraska in absence of Sedgwick, C. J., from this State." Obviously, in procuring the signature of Justice Letton, counsel overlooked the fact that by § 999, Rev. Stat., it was necessary that the writ of error should be allowed by the Chief Justice of the court. The recital made by Justice Barnes following his signature is, however, *prima facie* evidence of the correctness of the statements therein contained, viz., the absence of the Chief Justice from the State and the fact that Justice Barnes was in his absence the Presiding Judge of the Supreme Court of Nebraska, and counsel have not assailed the accuracy of the representations. We are of opinion that the statute was complied with. *Havnor v. New York*, 170 U. S. 408, 411.

The contention of the absence of a Federal question is also without merit. In effect, the plaintiffs in error pleaded their right and title to a moiety of the tract in controversy under the joint patent of July 24, 1903, and urged in support thereof the claim that the legal title had not before the date named passed out of the United States, that the land was within the jurisdiction of the General Land Office, and that up to a short time before the execution of the joint deed the department had assumed and exercised jurisdiction over controversies respecting the land. Such a contention cannot be said to be frivolous, and as the state court necessarily decided against

the right or title so specially set up under the United States, we possess jurisdiction.

·That the decision of the court below was right, as applied to the land within the place limits of the main line grant made to the Union Pacific Railroad Company by the act of 1862 and the amendatory act of 1864, is not an open question. This is so, since it has been expressly held that the main line grant was one *in præsenti*, that the grantee company had a right to bring ejectment for such land after the definite location of its road, and that consequently from the time of such definite location a possession might be acquired by a third party to land embraced within the grant, which would be adverse, even as to the railroad company, and bar its title if possession was continued for the statutory length of time. *Deseret Salt Co.* v. *Tarpey*, 142 U. S. 241; *Toltec Ranch Co.* v. *Cook*, 191 U. S. 532; *Iowa Railroad Land Co.* v. *Blumer*, 206 U. S. 482. In the last-mentioned case, summing up the doctrine, it was said:

"But when the grant is *in præsenti*, and nothing remains to be done for the administration of the grant in the Land Department, and the conditions of the grant have been complied with and the grant fully earned, as in this case, notwithstanding the want of final certification and the issue of the patent, the railroad company had such title as would enable it to maintain ejectment against one wrongfully on the lands, and title by prescription would run against it in favor of one in adverse possession under color of title. *Salt Co.* v. *Tarpey*, and *Toltec Ranch Co.* v. *Cook*, *supra*."

· The conclusive effect of these rulings, if applicable, is not denied, but it is insisted that they are not pertinent, because the land in question was not a part of the main line grant, but was embraced within a grant for the construction of a branch road, which is so different from the grant for the construction of the main line, that the branch line grant cannot be held to have been a grant *in præsenti* within the principle of the previous cases. We proceed to consider this contention.

The grants to aid in the construction of branch lines embraced by the act of 1862 are found in §§ 9, 13 and 14 of the act. The grant to the particular branch line with which we are concerned is contained in § 14. By that section the Union Pacific Railroad Company was authorized and required to construct two branch lines of road and telegraph from a point on the western boundary of the State of Iowa and from Sioux City, in the State of Iowa, so as to connect with the line which was to start from the western boundary. The two branch lines referred to in § 14, as also the branch lines referred to in other sections of the act of 1862, were authorized to be constructed "on the same terms and conditions as provided" or "as contained in the act for the construction of the Union Pacific Railroad Company," etc. Section 17 of the act of 1864 amended § 14 of the act of 1862, so that the section read as follows, 13 Stat. 363:

"SEC. 17. *And be it further enacted*, That so much of section fourteen of said act as relates to a branch from Sioux City be, and the same is hereby, amended so as to read as follows: That whenever a line of railroad shall be completed through the States of Iowa, or Minnesota, to Sioux City, such company, now organized or may hereafter be organized under the laws of Iowa, Minnesota, Dakota, or Nebraska, as the President of the United States, by its request, may designate or approve for that purpose, shall construct and operate a line of railroad and telegraph from Sioux City, upon the most direct and practicable route, to such a point on, and so as to connect with, the Iowa branch of the Union Pacific Railroad from Omaha, or the Union Pacific Railroad, as such company may select, and on the same terms and conditions as are provided in this act and the act to which this is an amendment, for the construction of the said Union and Pacific Railroad and telegraph line and branches; and said company shall complete the same at the rate of fifty miles per year; *Provided*, That said Union Pacific Railroad Company shall be, and is hereby, released from the construction of said branch. And said com-

pany constructing said branch shall not be entitled to receive in bonds an amount larger than the said Union Pacific Railroad Company would be entitled to receive if it had constructed the branch under this act and the act to which this is an amendment; but said company shall be entitled to receive alternate sections of land for ten miles in width on each side of the same along the whole length of said branch: *And provided, further,* That if a railroad should not be completed to Sioux City, across Iowa or Minnesota, within eighteen months from the date of this act, then said company designated by the President, as aforesaid, may commence, continue, and complete the construction of said branch as contemplated by the provisions of this act: *Provided, however,* That if the said company so designated by the President as aforesaid shall not complete the said branch from Sioux City to the Pacific Railroad within ten years from the passage of this act, then, and in that case, all of the railroad which shall have been constructed by said company shall be forfeited to, and become the property of, the United States."

It will be observed that there was employed in the act of 1864 similar language to that used in the act of 1862 in regard to the consideration moving from the United States for the construction of the branch in question, viz., that the work should be done "on the same terms and conditions as are provided in this act, and the act to which this is an amendment, for the construction of the said Union Pacific Railroad and Telegraph line and branches." That consideration, among other things, was a grant of lands and also an issue of bonds by the United States. As we must refer to the terms of the main grant to the Union Pacific Railroad Company to determine the nature of like grants of land made in the acts of 1862 and 1864 to aid in the construction of the branch lines, we see no escape from the conclusion that the construction given to the grant of lands within place limits made in aid of the main line must be adopted as to the grants of place lands made in aid of branch roads, and as we have seen the settled construc-

tion is that title to lands within the place limits passed by the main grant on the filing by the road of its map of definite location in the General Land Office. Nor is there merit in the contention that a different construction is rendered necessary. by the circumstance that the road which might build up the branch from Sioux City was not or may not have been in existence at the time of the passage of the act of 1864. As well argue that because § 7 of the act of 1862 required the Union Pacific Railroad to file its assent to the act, under the seal of the company, in the Department of the Interior, within one year after the passage of the act, that there was uncertainty as to whether the Union Pacific Company might accept and that the grant therefore could not be said to be one *in præsenti.*

Stress is also laid upon the fact that by § 17 of the act of 1864 it was provided that "said company shall be *entitled to receive* alternate sections of land for ten miles in width on each side of the same along the whole length of said branch," and, in effect, we are asked to treat this as the granting clause of the act. But it is clear that the clause deals only with the quantity of lands to be granted, and that reference must be made elsewhere to ascertain the precise character of the grant. Further, it is urged that the provision of § 17 concerning forfeiture for failure to complete the branch as required, embraces "all of the railroad which shall have been constructed by said company," but did not include the granted lands as in the case of the main line and other branches under § 17 of the act of July 1, 1862. From this it is argued that it was not the intention of Congress that the lands should pass under the grant for the Sioux City branch except as they were earned and duly patented. But whether or not the forfeiture was of the limited character referred to, we think the clause cannot be allowed to impair the force and effect of the operative words of present transfer made in the statutory grant of lands contained in § 3 of the act of 1862, as amended, in reliance upon which, as one of the terms and conditions of the contract with

the Government, the Sioux City and Pacific Railroad Company entered upon the construction of its road.

It results from the foregoing that the grant of the tract of land in controversy made by the act of 1862, and the amendatory act of 1864, to the Union Pacific Railroad Company and the Sioux City and Pacific Railroad Company being a grant *in præsenti*, and third parties on the definite location of the road not having acquired rights in the land, the legal title attached in favor of the two companies on the filing of their maps of definite location as of the date of the grant. Such title attached long prior to the purchase of the land by Japp. When the sale was made to him no contest was pending in respect to the land, and the statutory period of ten years, necessary in Nebraska to sustain a claim of title by adverse possession, ended prior to the various proceedings had in the General Land Office, to which we have heretofore referred, growing out of the invalid school selection and the conflicting adjudications of the office in respect to it.

That the entry and holding of the land by Japp, the grantor of Wiese, under the purchase by Japp in 1882, and the continued possession by Wiese after he acquired the land from Japp, should be deemed to have been adverse to the title and possession of the Sioux City Company, if the possession by Japp was not that of a co-tenant, and such possession was unaffected by the proceedings had in the land office subsequent to 1882, is not questioned. We are clearly of opinion that the possession of Japp and his grantee was adverse in the strictest sense of the term, and the acts of Wiese in seeking to acquire title from the United States under the act of 1887, with the view of removing a cloud upon his title, was not an act of recognition or acknowledgment of a superior title, either in the United States or in the Sioux City Company, operating to interrupt the continuity of his adverse possession, and in any event cannot be held to have destroyed a title which had already become perfect by the expiration of the statutory period in Nebraska for acquiring the legal title to land by adverse possession.

The foregoing considerations, we think, dispose of the various contentions presented to our notice, and, finding no error in the judgment of the Supreme Court of Nebraska, it is, for the reasons stated,

*Affirmed.*