MARCELIN HAYDEL, PLAINTIFF IN ERROR, *v.* FRANCOIS DUFRESNE.[*]

In 1811, congress passed an act (2 Stat. at L. 663) giving to the owners of land in Louisiana bordering on any river, creek, &c., the preference in purchasing back land ; and where, by reason of bends in the river, each claimant could not obtain a tract equal in quantity to the adjacent tract already held by him. the surveyor of the district, under the superintendence of the surveyor of the public lands, south of the State of Tennessee, was directed to divide the vacant land between the several claimants in such a manner as to him might seem most equitable.

These officers decided, as judges, upon the equities of the claimants ; and their allotments are not liable to be overthrown by courts of justice, upon any other ground than that of fraud, which is not imputed in this case.

THIS case was brought up from the supreme court of the State of Louisiana, by a writ of error issued under the 25th section of the judiciary act.

The widow Francois Dufresne filed her petition in the fourth judicial district court of the State of Louisiana, in the parish of St. John the Baptist, complaining that the United States deputy surveyor had allotted to her $79\frac{28}{100}$ acres of back land, instead of $121\frac{13}{100}$ and had given to Mrs. widow Marcelin Haydel, $243\frac{20}{100}$ acres, instead of $201\frac{95}{100}$, which was her fair proportion.

It is not necessary to trace the progress of the dispute, or to refer to the surveys. The fourth judicial district court decided that, inasmuch as the deputy surveyor had apportioned the back lands in the manner now complained of, and there was not to be found on the face of the survey such gross preference and unwarrantable proceeding, which alone, in some cases, would require the interposition of a court of justice, the defendant should be quieted in her possession. Other points were raised and decided, which it is not necessary to notice.

It was carried to the supreme court, which reversed the judgment of the court below, holding that the act of the deputy surveyor was merely ministerial, and that he was bound to make an equitable division of the back land between the front owners, in proportion to the respective quantities held by the latter.

The widow Marcelin Haydel brought the case up to this court.

It was argued by *Mr. Janin*, for the plaintiff in error, and submitted upon a printed argument by *Mr. Grailhe*, for the defendant in error. Only those parts of the arguments will be noticed which related to the point upon which the decision of their court turned.

*Mr. Janin*, for plaintiff in error.

I. The power of congress over the public lands is unlimited. Bragnell *v.* Broderick, 13 Pet. 439 ; Wilcox *v.* Jackson, Id. 498 ; Foley *v.* Harrison, 15 How. 433. Congress had the un-

[*] Mr. Justice Wayne, having been indisposed, did not sit in this cause.

doubted right to prescribe the extent to which, and the boundaries within which, portions of the domain might be purchased as back concessions. By the 5th section of the act of March 3, 1811, congress prescribed that this extent and these boundaries should be determined in certain cases, such as this, by the deputy surveyor of the district and the surveyor of the district south of Tennessee River. These officers are, therefore, the exclusive judges of the matters now brought before this court, by the plaintiff, subject only to the supervision of the general land-office. In the case of Wilcox v. Jackson, 13 Pet. 511, the supreme court of the United States held the following language:

"Before we proceed to inquire whether the land in question falls within the scope of any of these prohibitions, it is necessary to examine a preliminary objection which was urged at the bar, which, if sustainable, would render that inquiry wholly unavailing. It is this: that the acts of congress have given to the registers and receivers of the land-offices the power of deciding upon claims to the right of pre-emption — that upon these questions they act judicially — that, no appeal having been given from their decisions, it follows, as a consequence, that it is conclusive and irreversible. This proposition is true in relation to every tribunal acting judicially, whilst acting within the sphere of its jurisdiction, where no appellate tribunal is created; and even where there is such an appellate power, the judgment is conclusive when it only comes collaterally into question, so long as it is unreversed. But directly the reverse of this is true in relation to the judgment of any court acting beyond the pale of its authority. The principle upon this subject is concisely and accurately stated by this court, in the case of Elliot et. al. v. Peirsol et al. 1 Pet. 340, in these words: ' Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But, if it act without authority, its judgment and orders are regarded as nullities. They are not voidable, but simply void.' "

The case of Jourdan v. Barrett, 4 How. 169, is very analogous to this, and conclusive on the authority of the surveyors. See pp. 182–184.

That the surveyors acted within the scope of their authority, is not questioned; and, from the authorities just quoted, it appears that the propriety or correctness of their decision is beyond the reach of courts of law. But were the question open, it would be easy to show that their decision is unassailable, and that a court of justice would decide as the surveyors did. The object of the enactment of congress was to provide for the appor-

tionment of back lands in certain localities, where every front proprietor could not obtain a quantity equal to his front tracts — that is, on points of land. The precise limits of the point, the lands of which are thus to be made to contribute and participate, cannot be determined by legislative language ; each point begins in a bend ; while one man may suppose it to begin in the middle of the bend, another may be of opinion that it really begins only at its extremity. Under these circumstances, the surveyor followed the most prudent course.

*Mr. Grailhe,* in reply to the above.

We candidly confess there is some " simplicity," if not in the point at issue, at least in the arguments brought forward to mislead the judgment of this court.

They are, in substance, the following : That the 5th section of the act of congress, approved March 3, 1811, takes from the judiciary power the right to determine upon conflicting claims arising under this law, and transfers it over to the ministerial, or executive department.

A more forced conclusion cannot be drawn from the plain language of the section quoted, which, in full, reads as follows :

" And the principal deputy surveyor is hereby authorized to cause to be surveyed the tracts claimed by virtue of this section ; and in all cases where by reason of bends in the river, lake, creek, &c., each party cannot obtain a tract equal in quantity to the adjacent tract already owned by him, to divide the vacant land applicable to that object between the several claimants, in such manner as to him may appear most equitable."

Now are these words exclusive of the concurrent jurisdiction of the judiciary ? No ; and we repeat that an attempt to impose on them such a construction, is a stretch of imagination and credulity not to be admitted.

And, in fact, in whatever manner the subject may be viewed, can congress derogate from the great principles of the constitution ? It is urged that congress, having the primordial possession of the soil, may fix such restrictions as it pleases to its disposal. But congress is only invested with the delegated powers of the original sovereign States, and all powers not expressly granted are admitted to be withheld.

The first section of article 3d of the federal constitution, says that the judiciary power of the United States shall be vested in one supreme court, and in such inferior courts as congress may from time to time ordain and establish ; and the following article adds that said power shall extend to all cases arising under the constitution and laws of the United States.

By the 3d section of article 4th, congress is empowered to

Haydel *v.* Dufresne.

dispose of, and make all needful regulations relative to, the territory or other property of the United States.

But can these regulations, which in fact are laws of the land as well as land laws, differ from the general principles adopted in the social compact?

The answer is obvious, and though it had been unnecessary to point it out, yet, congress has, on different occasions, answered the query, more especially in the act of March 3, 1831, already quoted, where, referring to similar conflicting claims, it says [sect. 6]: " That in relation to all confirmed claims as may conflict, the register of the land-office and receiver of public moneys are hereby authorized to decide between the parties, and shall be, in their decision, governed by such lines or boundaries as may be agreed upon between the parties, either verbally or in writing: and in case no boundaries be agreed upon between the parties, said register and receiver are authorized to decide between the parties in such manner as may be consistent with the principles of justice; and it shall be the duty of the surveyor-general of said State to have those claims surveyed and plated in accordance with the decision of the receiver and register. Provided, that said decisions and surveys and the patents that may issue thereon, shall not, in anywise, be considered as precluding a legal investigation and decision by the proper judicial tribunal."

Does it not now appear that a " patent" may be inquired into, in any case, where it has improvidently issued?

But one of the boldest attempts to mislead a court of justice is certainly found in the assumption that the case of Jourdan *v.* Barrett, 4 How. Rep. 169, supports the position of defendant, when in fact it upsets every principle by her invoked. This decision merely establishes that a survey made after the act of May 1, 1831, providing for a surveyor-general of Louisiana, could not be binding if made by the surveyor of lands south of Tennessee, with whom was by former laws vested the right of survey in Louisiana and the adjacent States; but, as to a word relative to the *exclusive* jurisdiction of executive or ministerial authority, we dare the opposite counsel to quote from that case.

Yet, it is confidently asserted, and we must say that we were struck with astonishment to hear it mentioned, that this exclusive power to decide between conflicting claims could not be questioned, and was universally admitted.

Nothing is so far remote from the real state of things, and we challenge the issue. We here proclaim, and this for the honor of our federal courts, that such a heresy has never been dreamed of by them, and that every misquotation from their decisions to that effect, is made with a view to " give so much of truth as will suggest an untruth."

Haydel *v.* Dufresne.

Take, for instance, the leading case of Wilcox *v.* Jackson, 13 Pet., quoted by our adversary.

It would, from the fragment chosen, appear, that the court in that case maintained an entry and survey against any other equity of antecedent date; but not so, however.

Jackson was an officer of the United States army, stationed at a certain place, set aside by congress as a military post. Wilcox had settled himself, as a squatter, on part of the tract, and, after various frustrated attempts, had succeeded in obtaining from the register a certificate of preëmptioner, a located warrant and a "survey" from the proper officers. Then he sued Jackson, the party in possession.

What did the court decide? That congress was at liberty to dispose of their public lands as they pleased; that having set the land aside for certain purposes, it could not be treated as belonging to the mass of public property, and when, as quoted in defendant's brief, they speak of the power given to registers and receivers to decide upon questions of location, they say that so long as they remain within their duties, their acts are legal; but not so, when transgressing them. And they then set aside the decision which had been rendered in favor of Wilcox, by the land officers.

How could any one be so bold as to give the foregoing case such a misinterpretation as that sought to be forced on the court in the present instance?

We repeat again, that such a heresy is not sanctioned, and we hope never will be sanctioned, by an American tribunal; for it would not only be tainted with illegality and unconstitutionality, but submit, in a free country, the rights of citizens to the whims, caprices, or corruption of the irresponsible recipients of executive favor.

Mr. Justice CATRON delivered the opinion of the court.

The plaintiff and defendant are respectively owners of tracts of land forty arpens deep, situate in a concave bend of the Mississippi River, in Louisiana; their tracts front on different sides of the deepest point of land, and when the side lines of each tract are extended perpendicular to a base line corresponding with the bank of the river, the two tracts interfere before the second depth of forty arpens is obtained.

By the 5th section of an act approved the 15th of February, 1811, congress provided "that every person who, either by virtue of a French or Spanish grant, recognized by the laws of the United States, or under a claim confirmed by the commissioners appointed for the purpose of ascertaining the rights of persons claiming lands in the territory of Orleans, owns a tract border-

ing on any river, creek, bayou, or watercourse, in the said territory, and not exceeding in depth forty arpens French measure, shall be entitled to a preference in becoming the purchaser of any vacant tract of land adjacent to, and back of his own tract, at the same price and on the same terms and conditions as is or may be provided by law for the public lands in said territory. And the principal deputy surveyor of each district, respectively, shall be, and he is hereby authorized, under the superintendence of the surveyor of the public lands south of the State of Tennessee, to cause to be surveyed the tracts claimed by virtue of this section. And in all cases where, by reason of bends in the river, lake, creek, bayou, or watercourse bordering on the tract, and of adjacent claims of a similar nature, each claimant cannot obtain a tract equal in quantity to the adjacent tract already owned by him, to divide the vacant land applicable to that object between the several claimants in such a manner as to him may appear most equitable."

Those under whom the plaintiff and defendant hold their lands, respectively, availed themselves of the preëmption accorded by this law. The husband of the plaintiff, having 155 $\frac{80}{100}$ acres in his front tract, paid into the hands of the receiver of public moneys, $148.75, for a certificate of the entry of 119 acres of the lands in his rear. Nicholas Haydel, under whom the defendant holds, owned a front tract containing 249 $\frac{54}{100}$ acres, and paid into the hands of the receiver of public moneys the price of 248 acres, for his entry of the back lands, under the law.

The whole quantity of land in the rear, subject to their entries, was 322 $\frac{48}{100}$ acres, as to which there was no conflict between them and any other proprietors. Of this quantity the principal deputy surveyor of the United States allotted to Haydel 243 $\frac{20}{100}$ acres, and Dufresne 79 $\frac{28}{100}$. His survey dividing the land in dispute was part of a township survey, and was approved in March, 1831, by the surveyor of public lands south of the State of Tennessee, and a patent was issued to Haydel for 243 $\frac{20}{100}$ acres of the land, in 1845.

The petition charges error in the division, but nothing more, and asks a redivision of the land by the district court, on the sole ground of a vested equity in the plaintiff to forty acres of the land granted to Haydel. It is not alleged that Haydel controlled the surveyor, or had any connection with, or even knowledge of, the alleged error when the survey was made.

On this state of pleading and fact, the district court decided for the defendant, and dismissed the petition; and an appeal was prosecuted to the supreme court of Louisiana, which reversed the judgment of the district court, and ordered that

court to cause the land in dispute to be divided by a resurvey, so as to give Dufresne forty acres of the land for which Haydel had obtained a patent. This judgment was given on the assumption that, by their respective entries in the district land-office, each party took an equity in the back land in proportion to the quantity of his front tract, when compared with the contending tract; and that thus the respective equities stood before and at the time when the lands were officially surveyed; and that the principal deputy who laid off the lands, under the supervision of his principal, acted in a merely ministerial capacity, and had no discretion to divide them so as to give Dufresne less than a full proportion of the whole. If it be true, that irregular entries of unsurveyed back lands, which entries were allowed by courtesy of the general land-office, vested an equity in the enterer, and divested the United States of title, as the state court held, then it must follow, that after the entries were generally made in this loose form, throughout the coast of the Mississippi River, in Louisiana, that the courts of justice might have decreed partitions among front proprietors, in all instances, and have had the lands surveyed by judicial authority, and superseded the action of the United States altogether, as required by the act of 1811.

These anomalous entries were conditional, and made subject to a future public survey; to this effect the receipt for the money was given by the receiver, and the register was instructed not to transmit the certificate of purchase until the survey was completed.

The constitution vested congress with power to dispose of the public lands, and to make all needful regulations for this purpose; and as respects the class of lands under consideration, the proper department ordered, as a rule having few exceptions, that they should be laid down as part of a general plan of township surveys, and in connection with the public lands and private claims adjoining; and that this general survey should settle the quantity and form of each tract of back land to which a front owner had a preference of entry.

In this instance the survey was made by the principal deputy of the proper district, under the superintendence of the surveyor of public lands south of the State of Tennessee, as required by law; by this survey, it was ascertained that neither of the claimants here litigating could obtain a tract equal in quantity to his front tract; and therefore it became necessary for the surveyor, assisted by his immediate superior, to divide the vacant land between these two front owners, " in such manner as might seem to him most equitable." When the survey was approved, if the party here suing supposed himself aggrieved,

3*

he was authorized to appeal from the decision of the principal deputy, and the surveyor-general south of Tennessee, to the Commissioner of the general land-office; and from his decision, if unfavorable, to the secretary of the treasury.

Congress contemplated that these lands should be divided among front proprietors, by a surveyor on the ground, aided by his principal; these officers were bound to act according to their best judgment, and decide as judges on the equities of these claimants; nor could the courts of justice interfere to control their acts, if they were honestly performed; the contrary of which is not alleged in this case.

This construction of the law is altogether necessary, as great confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done, and divisions more equitably made, than the department of public lands could do.

It is ordered that the judgment of the supreme court of Louisiana be reversed.

## *Order.*

This cause came on to be heard, on the transcript of the record, from the supreme court of the State of Louisiana, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said supreme court in this cause be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said supreme court, with directions for further proceedings to be had therein, in conformity to the opinion of this court, as to law and justice shall appertain.