**UNITED STATES of America, Appellant,**

v.

**WEYERHAEUSER COMPANY, a corporation, Appellee.**

No. 21275.

United States Court of Appeals
Ninth Circuit.

Dec. 26, 1967.

Rehearing Denied Feb. 28, 1968.

William M. Cohen (argued), Land & Natural Resources Div., Dept. of Justice, Roger P. Marquis, Dept. of Justice, Edwin L. Weisl, Jr., Asst. Atty. Gen., Washington, D. C., for appellant.

Kenneth E. Roberts (argued), Thomas M. Triplett, of Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., George H. Bonneville (argued), Tacoma, Wash., for appellee.

Amended Opinion

Before MADDEN, Judge of the United States Court of Claims, and HAMLEY and MERRILL, Circuit Judges.

MADDEN, Judge:

The appellee corporation, hereinafter called Weyerhaeuser, sued the United States for damages for the conversion of

logs cut and removed from land claimed by Weyerhaeuser to be its land. The only issue in the case is the ownership of the land from which the logs were taken. The district court decided that the land belonged to Weyerhaeuser, and awarded it a money judgment against the United States. The case is here on the appeal of the United States from that judgment.

The land here in question, consisting of 45.95 acres, was, in 1855, a part of the public lands of the United States, as was all of the land in the immediate area. A surveyor, Hathorn, was employed by the United States to survey a line called by the Government the Sixth Standard Parallel South, through Ranges 8, 9 and 10 West. The sixth parallel line was, of course, an east and west line. Under Hathorn's contract he was required to establish the exterior lines of the townships lying along and immediately south of the sixth parallel. A township, in a government survey, is a square tract six miles on each side, thus containing thirty-six square miles of land. One of the townships which Hathorn was under a duty to survey was Township 28 South, Range 8 West. His contract also required him to subdivide the townships surveyed by him into sections, each section being a square, each side of which is one mile long, each township thus containing 36 sections, and each section containing one square mile, 640 acres of land. At the point on the sixth parallel which coincided with the northeast corner of Township 28, Hathorn placed a monument which would permanently mark that corner of the township, then, as he worked west along the parallel, he placed a monument a mile west of the beginning point, and so at each successive mile for the six miles of Township 28, then turning south at right angles to the parallel, placed a monument each mile along the west side of the township, then turned east for six miles and then north for six miles to the beginning point on the sixth parallel, placing monuments each mile along these exterior lines. Then he surveyed the lines in the interior of the township, running from each mile monument on the sixth parallel to the corresponding mile monument on the south boundary of the township. Then he surveyed the east-west lines connecting the monuments on the east and west sides of the township. The purpose and effect of the surveying and marking of these exterior and interior lines of the township was to checker-board the township into thirty-six sections, and the consequent number of half sections and quarter sections.

In 1896, at which time the land on both sides of the sixth parallel was still public land of the United States, another surveyor, Heydon, was employed by the Government to survey Township 27, which lay north of the sixth parallel, and the east and west boundaries of which would be extensions of the lines forming the east and west boundaries of Township 28 which, as we have seen, lay south of the sixth parallel. A part of Heydon's directions was to retrace the sixth parallel as established by Hathorn, which retraced line would be a common boundary between Township 28, surveyed in 1855, and Township 27, which Heydon was to survey in 1896.

Heydon retraced the Hathorn location of the sixth parallel as best he could. He found Hathorn's monument marking the point on the sixth parallel which was the northeast corner of Township 28. It should be noted that the 36 sections of a township are, in government surveys, numbered from the northeast corner of the township westward along the top tier of sections, then eastward along the second tier and so on through the 36 sections. Not counting the monument on the sixth parallel, from which monument we proceed westward, Heydon found Hathorn's first and second mile monuments. He could not find the third or fourth mile monuments. He did find a Hathorn half mile monument half way between where the fourth should have been, and the fifth, which he found. He found the sixth, which was the northwest corner of Township 28. Thus for two and one-half miles of the six miles on the sixth parallel survey by Hathorn,

Heydon had no monuments. In retracing the Hathorn location of the sixth parallel for this two and one-half mile distance, Heydon had only a point of beginning, at the second mile monument, and a place two and one-half miles west, to get back on the Hathorn line.

Heydon placed mile monuments at locations which his survey convinced him, were on the sixth parallel, at points one and two miles west of the Hathorn two-mile monument which he had found. Heydon proceeded to complete his survey of Township 27, subdividing it as Hathorn had done with Township 28 in 1855. Heydon's survey of Township 27 was officially accepted and approved in 1897. On the official plat of the township was a statement that it was amended and was strictly conformable to Heydon's field notes which had been filed. Those field notes state that "none of the original corners set by Hathorn were found * * * for two and one-half miles" along the south boundary of Township 27. The south boundary was shown on the plat of Heydon's survey as being the sixth parallel.

We have described the situation as it existed in 1896, at which time all the lands in Townships 28 and 27 were still public lands of the United States. At various times between 1903 and 1948 the United States conveyed by patents to persons who later conveyed to Weyerhaeuser sections 31, 32, 33, 34 and 35 of Township 27. These sections were in the southern tier of sections in Township 27.

At some time not long before the year 1961, excavations during a road-building project uncovered the Hathorn monuments which Heydon had been unable to find in 1896. The Heydon monuments were still there. The line set by the Heydon monuments, placed by him to replace the two Hathorn monuments which he could not find, lay north of the line set by the later discovered Hathorn monuments. Thus an area of land, the area here in question and shown by the map attached hereto as Appendix 1, lay between the Hathorn line and the Heydon line. This area is some 300 feet wide at its widest point and contains 45.95 acres. The logs taken by the United States from this area are the subject of this lawsuit, and the ownership of the area is the decisive question.

After the discovery of the two sets of monuments, the Government in 1961 caused a "dependent resurvey" to be made. That resurvey disclosed the hiatus, hereinbefore described, left by the variations between the Hathorn and Heydon surveys. The area of the hiatus was surveyed and subdivided and was designated as Township 27½. This township contains 45.95 acres, instead of the usual 36 square miles, of land.

Before the Hathorn survey in 1855, the sixth parallel was an abstraction, and remained so until it was located by human means on the surface of the earth. The rugged nature of the earth's surface in the area made it unthinkable that any two surveyors, working independently of each other, would locate it in the same place. Hathorn made his survey, monumented his line, and the sixth parallel ceased to be an abstraction. When some of his monuments ceased to be the subject of human consciousness, the sixth parallel, for the distance between his remaining discoverable monuments, again became an abstraction, and remained so until another surveyor, Heydon, in 1896 located the sixth parallel on the ground. Neither party to this litigation attempts to tell us where the sixth parallel really is, in the disputed area. Neither claims that Hathorn was a more competent surveyor than Heydon, or vice versa. Both parties recognize that one or the other of the lines set by these two surveyors is the decisive line in fixing the south boundary of Township 27. They differ as to which of the two lines is the one properly applicable.

Weyerhaeuser urges that the Hathorn line is the applicable one because it was drawn first and thus permanently located the boundary. That would mean that the true line was unknown and apparently unknowable for decades, per-

haps for most of a century. Yet the owner of the land, the United States, could do nothing except hold the land, or dispose of it in bulk, because neither it nor a prospective purchaser could know what was being bought and sold on either side of the unknown sixth parallel. We can think of no possible reason why a landowner, having had his land surveyed and subdivided, may not, either because monuments have disappeared or because he has changed his mind as to the wisdom of his subdivision, have his land resurveyed. If, as in the case of the United States, the area in question is large and in rugged territory and the monuments of the earlier survey have disappeared, the owner knows that the resurvey will not place the lines exactly where they were in the earlier survey. He causes the resurvey to be made and thereafter sells parts of his land, describing those parts with reference to the later survey. If the prospective purchaser wants to go to the trouble or expense of assuring himself as to where the boundaries are by searching for the monuments marking the boundaries, the only monuments to be found are those of the survey on the basis of which the sale is being made.

The first and only survey of Township 27 in existence at the time Weyerhaeuser's predecessors in title received their patents to land in Township 27 was the 1896 Heydon survey, which survey had been officially accepted and approved by the Secretary of the Interior and upon the basis of which the official plat of the township had been made. That survey contained a monumented line marking the southern boundary of the township, which line also marked the southern boundary of each of the sections of the southern tier in the township. The land included in the patents could not have been ascertained, for use or occupation by the patentees, except by reference to that survey and plat. If the areas included in the patents were not so defined and limited, the southern boundaries of the sections were at large. If those boundaries were open to litigation upon claims that the surveyor was incompetent, or that his instruments were inaccurate, or that the Secretary should not have accepted and approved his survey, innumerable attacks upon titles could be made. The wisdom of centuries of land law to the effect that lines marked on the ground by monuments stand highest in the determination of the true boundaries of conveyed land, ranking above statements of directions, distances, or area, would be discarded.

The patents issued by the Government after the Heydon survey, which was the only survey of Township 27, did not purport to convey any land which was not included in that survey. Weyerhaeuser here is claiming that the patents to its predecessors in title granted lands which were outside the official survey of Township 27. In Haydel v. Dufresne, 58 U.S. (17 How.) 23, 30, 15 L.Ed. 115 (1854), the Court said:

> [G]reat confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done, and divisions more equitably made than the department of public lands could do.

The instant case is a textbook example of a departure from that admonition of the Supreme Court. The district court said in its conclusions:

> Heydon could not find Hathorn's monuments and corners forming the south boundary of the land area in dispute (however, they were there, and *were* found in 1961), and, faced with this loss of corners and monuments, instead of proceeding "due west" in extension of the 6th Standard Parallel line he had been retracing, he varied to the north from infinity to a maximum of approximately 150 feet, over the distance of three miles. Heydon deviated from his instructions, and his corners and monuments cannot stand as the south boundaries of Secs. 32, 33, 34, and 35 in Tp. 27.

In this conclusion the district court was in error.

We also think the court was in error in the following statement in its conclusions.

There is and can be but *one* 6th Standard parallel South, dividing Tp. 27 and Tp. 28 and forming the south boundaries of Secs. 32, 33, 34 and 35 in Tp. 27, and that is the 6th Standard Parallel South surveyed and established on the ground by Hathorn in 1855 as he was commissioned to do. (Emphasis in original.)

As we have explained earlier herein, we think that it cannot be said that there is but *one* sixth parallel until we have a combination of the ideal surveyor, using ideal instruments in an ideal terrain. Until that combination is available, land titles will be dependent upon the deficiencies and uncertainties which afflict the world as it is.

There is no problem in this case of impairment of vested rights. When the Government in 1896 employed Heydon to survey Township 27, no one except the Government had any rights in the area, all of which was owned by the Government. There being no rights in other persons in 1896, no rights were impaired by what the Government did with or upon its own land. There is no claim in this case of any breach of covenant made by the Government in its conveyances of 1903 and thereafter.

The district court said that it disregarded the 1961 cadastral survey on the basis of which the Government created the new Township 27½. We think those events are irrelevant to the issues in this case. The Government could not, of course, have taken any land from Weyerhaeuser for inclusion in its newly created township. Our only question is whether Weyerhaeuser owned this land which was south of the Heydon surveyed line. If, as we think, it did not, we have no occasion to decide who did own such land and what it might do with it.

The Government raises the question whether Weyerhauser should have ex-hausted its administrative remedies in the Department of the Interior in order to be entitled to bring this suit. We have not considered that question thoroughly because we think that in the circumstances it would be uneconomical practice to send the case all the way back to the Department of the Interior for further administrative proceedings.

■ We have this case upon what is, in effect, an agreed statement of facts. We perceive in it only one decisive issue, which is whether or not the Government's patents to Weyerhaeuser's predecessors in title conveyed to them the land here in question, which lay outside the boundaries of the Heydon survey. We answer that question in the negative, and therefore reverse the judgment of the district court, with a direction to dismiss the complaint.

MERRILL, Circuit Judge (concurring):

I concur in the result reached by the majority. In my view Township 27 and Township 28 are right where the Government put them, whether that is precisely where they were intended to be put or not. Official approval and platting of the surveys established the township boundaries in accordance with their respective monuments. Consequently the north boundary of Township 28 is where Hathorn put it and the south boundary of Township 27 is where Heydon put it. Heydon did not affect the Township 28 line since he did not purport to re-establish it and was not concerned with that township. His assumption that he was on a common boundary cannot affect what he actually did and what the Government officially adopted. The resulting error in placement was subject to official correction and to re-establishment of a common boundary, but such correction and the decision to correct are beyond the judicial function. The result is that the area designated as Township 27½ is still unpatented public land.

APPENDIX

APPENDIX 1

Exhibit 1

T. 27½ S., R. 8 W., W.M., OREGON.

Act of May 31, 1918
Sec. 31
Pat. to
Pillsbury
Lumber Co.

Act of June 4, 1897
Sec. 32
Pat. to
A.B. Hammond
(Lieu Selection)
Weyerhaeuser

T. 27 S., R. 8 W.

Act of May 31, 1918
Sec. 33
Pat. to
Pillsbury
Lumber Co.
Weyerhaeuser

Act of June 4, 1897
Sec. 34
Pat. to
A.B. Hammond
(Lieu Selection)
Weyerhaeuser

Acts of May 31, 1918
August 23, 1948
Sec. 35
Pat. to
Pillsbury
Lumber Co.
Weyerhaeuser

Pat. to
Weyerhaeuser
Timber Co.

Pillsbury
Lumber Co.
Weyerhaeuser

Lieu Selection
Sec. 6
Lieu Acts 1897-1899
N. P. R. Co.
Weyerhaeuser

1   2   3   4

Coos Bay
Wagon
Sec. 5
Road
Act of March 3, 1869
Grant Lands

T. 27½ S., R. 8 W.

Sec. 33
Pat. to Mrs.
Elizabeth Creech
Pat. to 3
Frank M.
Peterson
Pat. to
Floid E.
Creech
Carothers
Sec. 4
All-Act of April 24, 1820

T. 28 S., R. 8 W.

Coos Bay
Wagon
Sec. 34
Road
Act of March 3, 1869
Grant Lands

Sec. 3
Act of March 3, 1869
Grant Lands

Horace R. Barnotee Via
Sec. 2
Acts of April 24, 1820
May 20, 1862

1896 Corners resurveyed
1855 Corners resurveyed

Chains
60 50 40 30 20 10 5 0