**UNITED STATES of America,**
**Plaintiff,**
and
**State of Nevada, on Relation of its Department of Highways, Intervenor,**
v.
**Dorothe MACMILLAN, Administratrix of the Estate of Gordon Macmillan, Day Cattle Co., et al., Defendants.**
**Civ. No. R–2219.**

United States District Court,
D. Nevada.

Sept. 9, 1971.

Bart M. Schouweiler, U. S. Atty., Reno, Nev., for plaintiff.

Harvey Dickerson, Atty. Gen., of Nevada, for intervenor.

Wilson & Wilson, Elko, Nev., for defendants.

## OPINION

BRUCE R. THOMPSON, District Judge.

This is an action to declare the title to Lot 5, Section 31, T. 33 N., R. 49 E., M. D.M. Nevada, consisting of approximately 12.57 acres of land. Plaintiff, United States, claims the tract is now and always has been public domain. Defendants Dorothe Macmillan, Administratrix, and Day Cattle Co. defend on the basis of mesne conveyances originating from a patent issued to the Central Pacific Railway Company as required by certain Acts of Congress. The State of Nevada intervened as a party plaintiff because it has taken and claims the right to take gravel from the parcel under permit issued by the United States.

Before these public lands were surveyed, Congress passed the Acts of July 1, 1862, 12 Stat. 489, and July 2, 1864, 13 Stat. 356, to aid in the construction of certain railroads, which provided, among other things, for a grant to the Central Pacific of alternate odd-numbered sections of land within twenty miles of the railroad right of way. The Section 31 in which the parcel in question is located is one of such sections.

The north boundary of T. 32 N., R. 49 E. (which should also be the south boundary of T. 33 N., R. 49 E.) was established by Hatch and Eaton in a survey approved September 8, 1871, and by Hatch, Skinner and Preble in a survey approved October 14, 1874. In 1874, Hatch, Skinner and Preble also surveyed T. 33 N., R. 50 E., and established the meridian line between T. 33 N., R. 49 E., and T. 33 N., R. 50 E., that being the west boundary of T. 33 N. R. 50 E. In the same survey, Hatch, Skinner and Preble surveyed some of the interior sections of T. 33 N., R. 50 E., including the tier of sections along the westerly boundary of such township. This was also an approved survey.

The interior sections of T. 33 N., R. 49 E., were not surveyed until years later. On December 23, 1893, the Surveyor General approved the official plat of survey of this township showing the boundaries of Section 31 comprising 639.60 acres based upon the survey of H. B. Maxson. On June 20, 1902, at the request of the Central Pacific Railway Company, a patent was issued to it for some of the lands to which it was entitled under the aforesaid Acts of Congress, including, in T. 33 N., R. 49 E., "all of section thirty-one containing six hundred and thirty-nine acres and sixty hundredths of an acre." At the same time, the Central Pacific Railway Company received patents to Sections 13, 25, 33 and 35, T. 33 N., R. 49 E., and Sections 7, 19 and 31, T. 33 N., R. 50 E.

The Maxson Survey of 1893 established the south boundary of T. 33 N., R. 49 E., north of the north boundary of T. 32 N., R. 49 E., as fixed by the approved surveys of Hatch and Eaton and Hatch, Skinner and Preble, in 1871 and 1874. The Maxson east line of T. 33 N., R. 49 E., (that is, the meridian line between T. 33 N., R. 49 E. and T. 33 N., R. 50 E.) also did not conform with the earlier approved survey of such meridian line made by Hatch, Skinner and Preble in 1874. The chart annexed hereto illustrates the deficiencies.

The result was a substantial hiatus of unsurveyed public lands between the north boundary of T. 32 N., R. 49 E., and the south boundary of T. 33 N., R. 49 E. There was also an overlap because of the two different surveys of the

line which should be the common line between T. 33 N., R. 49 E. and T. 33 N., R. 50 E.

The United States (plaintiff) contends that the 1902 patent to Central Pacific was based on the Maxson survey and fixes the limits of the grant to Central Pacific through which defendants assert title. This contention must be sustained despite the fact that the Maxson survey was not referred to in the patent, which purported to convey "all" of Section 31. It is true that the right to the land granted by Congress for the assistance of the railroads by the Acts of July 1, 1862, and July 2, 1864, vested immediately on the filing by the railroad of its map of definite location of its line in the General Land Office. Missouri Valley Land Co. v. Wiese, 208 U.S. 234, at 245, 28 S.Ct. 294, 52 L.Ed. 466 (1908); United States v. Northern Pacific Ry. Co., 256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825 (1921); Chapman v. Santa Fe Pacific Ry. Co., 90 U.S.App.D.C. 34, 198 F.2d 498 (1952). It is also true, however, that the definition of the boundaries of the public lands of the United States is a duty residing in the legislative and executive branches of the Government whose determinations are binding on the judicial department. Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566 (1888); United States v. Weyerhaeuser Co., 392 F.2d 448 (9th Cir. 1968). While the railroad was entitled to the odd sections, as of right, by virtue of the granting legislation, the exact lands in T. 33 N., R. 49 E., to which it had a vested right were not determined until official approval of the Maxson survey and plat in 1893. That the ensuing patent in 1902 was dependent on the Maxson survey is self-evident. The patent conveyed all the odd-numbered sections in the township and in each instance, the acreage of each section conveyed was identical with the specified acreage in the Maxson survey. It was the first and only survey then in existence to which the patent could apply.

In 1914, during an official survey of T. 33 N., R. 50 E., the divergences between the Maxson survey and the earlier Hatch and Eaton and Hatch, Skinner and Preble surveys were discovered. The Surveyor General of Nevada sought instructions from the Commissioner of the General Land Office with the result that a resurvey was directed to the end that the earlier Hatch, Skinner and Preble lines be restored as the south and east boundaries of T. 33 N., R. 49 E. The resurvey was authorized by the Act of March 3, 1909, 35 Stat. 845 (43 U.S.C. § 772).

The resurvey by Surveyor Stewart ended in the approval on October 18, 1921, of a survey plat of T. 33 N., R. 49 E., which eliminated the overlap of the east line of T. 33 N., R. 49 E., and the west line of T. 33 N., R. 50 E., and closed the hiatus between the south line of T. 33 N., R. 49 E., and the north line of T. 32 N., R. 49 E., by including the previously unsurveyed strip into T. 33 N., R. 49 E., as lots appended to the southerly tier of sections of this township. Lot 5, Sec. 31, T. 33 N., R. 49 E., the subject matter of this action, is one of the lots so created.

The instructions from the Commissioner of the General Land Office directing the resurvey included the following observation:

"The only rights affected by this revision or extension survey in T. 33 N., R. 49 E. are those of the Central Pacific Railway Company in sections 13, 25, 31, 33 and 35. In sections 13 and 25 the railroad suffers a certain decrease in area, but this is more than offset by the increase obtained in sections 31, 33 and 35, and the adjustment, therefore, is not only equitable, but is advantageous to the railroad company."

Defendants rely on these instructions as conclusive of the right of the Central Pacific, defendants' predecessor in title, to the accretions to Section 31 resulting from the resurvey. It, nevertheless, is clear that whatever the equities may have been, the legal title of Central Pacific was established by the 1893 Max-

son survey, and no patent was requested by it or issued to it for the additional lands added by the resurvey to the southerly tier of sections in the township.

█ The statute itself (43 U.S.C. § 772), as well as the case law, precludes the affecting of vested rights by action of the Government correcting mistakes and misalignments in Government Surveys made, approved and acted upon. Hence, the ex parte declaration by the Commissioner of the General Land Office of the equities involved could not and did not accomplish a transfer of title. Cragin v. Powell, 128 U.S. 691, 699, 9 S.Ct. 203, 206, 32 L.Ed. 566 (1888):

> "It is conceded that this power of supervision and correction by the commissioner of the general land-office is subject to necessary and decided limitations. Nor is it denied that when the land department has once made and approved a governmental survey of public lands, (the plats, maps, field-notes and certificates all having been filed in the proper office,) and has sold or disposed of such lands, the courts have power to protect the private rights of a party who has purchased in good faith from the government against the interferences or appropriations of corrective resurveys made by that department subsequently to such disposition or sale. But there is nothing in the circumstances of this case which brings it within any such limitations."

See also United States v. State Investment Co., 264 U.S. 206, at 212, 44 S.Ct. 289, 68 L.Ed. 639 (1924).

This action directly affects the title only of Lot 5, Section 31, T. 33 N., R. 49 E. While the titles to Sections 13 and 25, T. 33 N., R. 49 E., and Sections 7, 19 and 31, T. 33 N., R. 50 E., are not being adjudicated in this action, they are indirectly involved because what happened to the property of Central Pacific along the meridian line between Ranges 49 and 50 is the predicate for the defendants' contention that the Stewart resurvey in 1921 had the effect in equity of granting the hiatus lands, of which Lot 5, Section 31, T. 33 N., R. 49 E., is a part, to plaintiff's predecessor in title, the railroad. This was on the assumption that the railroad had been deprived of property along the meridian line in effectuation of the putative exchange of lands. That this is not the case is demonstrated by the chart annexed hereto. The railroad cannot claim the Maxson meridian line for the purpose of extending the areas of of Sections 13 and 25, T. 33 N., R. 49 E., and at the same time claim the Hatch, Skinner and Preble meridian line for the purpose of extending the areas of Sections 7, 19 and 31, T. 33 N., R. 50 E. There is only one true and correct meridian line which controls the descriptions in the 1902 patents to the railroad.

█ We find the law to be that when two officially accepted surveys conflict and result in an overlap, the survey which is senior in time controls. 50 C.J. 914, § 56;[1] 11 C.J.S. Boundaries § 61, p. 633; Commissioner of Highways v. Beebe, 61 Mich. 1, 27 N.W. 713; Snodgrass v. Snodgrass, 212 Ala. 74, 101 So. 837 (1924); State v. Talkington, 274 S.W. 314 (Tex.Civ.App.1925); Houston Oil Co. v. Brown, 202 S.W. 102 (Tex. Civ.App.1917).

Thus the 1874 Hatch, Skinner and Preble Survey, not the 1893 Maxson Survey, controls the location of the meridian line between Ranges 49 and 50 and controls the boundaries of the railroad land grants along both sides of the meridian line. The 1921 Stewart resurvey changed nothing. Stewart merely found and restored the Hatch, Skinner and Preble line and corrected plats were

---

[1] "Conflicting Surveys. Of two overlapping surveys, the one first made has priority, particularly where the second is bounded with express reference to the first. An accepted survey covering lands in a particular township, has been regarded as controlling as against a subsequent conflicting survey which purports to cover land in another township." 50 C.J. 914, § 56, "Public Lands."

prepared to evidence the correct line as originally surveyed. The Stewart resurvey and corrected plats did not deprive the railroad of any lands to which it was legally or equitably entitled.

■ With respect to the hiatus area between T. 32, N., R. 49 E., and T. 33 N., R. 49 E., created by the incorrect Maxson survey in 1893, the law is equally well settled. While overlaps are controlled by the survey which is senior in time, hiatus lands remained in the public domain. United States v. Heyser, 75 I. D. 14 (1968); Standard Oil Company of California, A–25613 (May 2, 1950); O. O. Cooper, 59 I.D. 254 (1946); Rust-Owen Lumber Company, 52 L.D. 228 (1927). The boundaries of Section 31, T. 33 N., R. 49 E., under the 1902 patent to the railroad are controlled by the 1893 Maxson Official Survey, the only approved survey then extant. The concurring opinion of Judge Merrill in United States v. Weyerhaeuser, 392 F.2d 448 (9th Cir. 1968), is pertinent:

"I concur in the result reached by the majority. In my view Township 27 and Township 28 are right where the Government put them, whether that is precisely where they were intended to be put or not. Official approval and platting of the surveys established the township boundaries in accordance with their respective monuments. Consequently the north boundary of Township 28 is where Hathorn put it and the south boundary of Township 27 is where Heydon put it. Heydon did not affect the Township 28 line since he did not purport to re-establish it and was not concerned with that township. His assumption that he was on a common boundary cannot affect what he actually did and what the Government officially adopted. The resulting error in placement was subject to official correction and to reestablishment of a common boundary, but such correction and the decision to correct are beyond the judicial function. The result is that the area designated as Township 27½ is still unpatented public land."

The 1921 Stewart resurvey did not accomplish a transfer of title and the lots created along the southerly boundary of T. 33 N., R. 49 E., remained as unpatented public lands.

Thus the Commissioner of the General Land Office, in his instructions quoted supra, where he sought to describe the equities involved in 1921 Stewart resurvey, was wrong on all counts. He was wrong in his assumption that the railroad "suffers a certain decrease in area" in Sections 13 and 25 and he was wrong in his assumption that there would be an "increase obtained" in Sections 31, 33 and 35, T. 33 N., R. 49 E. Presumably these errors of reasoning were observed in the course of the proceedings for there is no evidence that the railroad ever sought or was ever offered a patent to the lots added by the 1921 Stewart resurvey along the south line of Sections 31, 33 and 35. The "equities" upon which defendants rely to persuade this Court to give effect to the putative exchange suggested by the instructions of the Commissioner of the General Land Office are nonexistent.

Defendants also rely upon a map, Exhibit 9, of T. 33 N., R. 49 E., M.D.M., obtained by a witness from the office of the Bureau of Land Management in Elko, Nevada some years ago. The map or chart shows the boundaries of the sections of such township in accordance with the Stewart resurvey in 1921 but the legends thereon indicate that the map depicts the survey of H.B. Maxson approved Dcember 23, 1893. There is no evidence as to why such a map was ever prepared. There is evidence which clearly shows that Exhibit 9 does not correctly show the Maxson survey of 1893 under which the Central Pacific Railway Company received title to Section 31, T. 33 N., R. 49 E., and the evidence clearly shows that the legends on the map, Exhibit 9, are incorrect. A transfer of title to lands in the public domain cannot be effected by the prepa-

ration of such an incorrect map or chart.

On October 15, 1940, the Central Pacific Railway Company and its successor in interest, the Southern Pacific Land Company, executed releases to the United States pursuant to the Transportation Act of 1940 (49 U.S.C. § 65) of all claims of whatever description to lands or interests in lands which should have been granted by any Act of Congress. These releases were effective disclaimers of any interest in Lot 5, Section 31, T. 33 N., R. 49 E. They preceded the first deed by the railroad to Dean Witter, defendants' predecessor in title.

Accordingly, a decree shall be entered as prayed for in the Complaint. The attorneys for plaintiff shall submit an appropriate form of decree.

LEGEND:

×—×—×—×—×     Maxson Survey

───────     Hatch, Skinner and Preble Surveys

Sections patented to Central Pacific Railway

[A4431]